# UNITED STATES DISTRICT COURT

### for the

### Northern District of Illinois

Eastern Division

|  |  |
|---|---|
| Sabrina Palmer | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| -v- | ) |
| | ) |
| | ) |
| | ) |
| Datadog, Inc. | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | |

1:26-cv-07279
Judge Elaine E. Bucklo
Magistrate Judge Young B. Kim

Case No RANDOM CAT 2
_____

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☑Yes ☐No

**FILED**

*W* JUN 22 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.   The Parties to This Complaint

#### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Sabrina Palmer |
| Street Address | 144 Happ Rd |
| City and County | Northfield, Cook County |
| State and Zip Code | Illinois, 60093 |
| Telephone Number | 847-922-5971 |
| E-mail Address | sabrinampalmer@gmail.com |

#### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | Datadog, Inc. |
| Job or Title *(if known)* | |
| Street Address | 620 8th Avenue, 45th Floor |
| City and County | New York, New York County |
| State and Zip Code | New York, 10018 |
| Telephone Number | 866-329-4466 |
| E-mail Address *(if known)* | info@datadoghq.com |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Datadog, Inc. (plaintiff was a fully remote employee) |
| Street Address | 2010 W Concord Pl (plaintiff's remote work location) |
| City and County | Chicago, Cook County |
| State and Zip Code | Illinois, 60647 |
| Telephone Number | 847-922-5971 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Other federal law *(specify the federal law)*:

☐    Relevant state law *(specify, if known)*:

☐    Relevant city or county law *(specify, if known)*:

Page 3 of 6

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☑ Termination of my employment.
- ☐ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☐ Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

January 6, 2025 (date of hire) through March 2, 2026 (date of discharge)

C. I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☑ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race _____
- ☐ color _____
- ☑ gender/sex     Female
- ☐ religion _____
- ☐ national origin _____
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*
  ADHD substantially limits learning and concentration

E. The facts of my case are as follows. Attach additional pages if needed.

See ATTACHMENT 1

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.     It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
March 23, 2026

B.     The Equal Employment Opportunity Commission *(check one)*:

☐     has not issued a Notice of Right to Sue letter.

☑     issued a Notice of Right to Sue letter, which I received on *(date)*     March 25, 2026     .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.     Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐     60 days or more have elapsed.

☐     less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See ATTACHMENT 4

---

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _6|22|2026_

Signature of Plaintiff _Sabrina Palmer_

Printed Name of Plaintiff _Sabrina Palmer_

### B. For Attorneys

Date of signing: _____

Signature of Attorney _____

Printed Name of Attorney _____

Bar Number _____

Name of Law Firm _____

Street Address _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____

**ATTACHMENT 1:**
**III(E): Statement of Claim; The facts of my case are as follows.**

**ATTACHMENT 1: III(E):** 1 of 6

**Parties**

1. Plaintiff Sabrina Palmer is a woman. Plaintiff has been diagnosed with Attention-Deficit/ Hyperactivity Disorder (ADHD). Compared to most people, Plaintiff's ADHD substantially limits the major life activities of concentrating and learning, including her ability to focus for sustained periods and to retain dense new technical information of the type required by the Sales Engineer role. With reasonable accommodation, Plaintiff is qualified to perform the essential functions of the Sales Engineer position.

2. Defendant Datadog, Inc. is a Delaware corporation headquartered at 620 8th Avenue, 45th Floor, New York, NY 10018, and employs 501 or more employees.

3. On January 6, 2025, Datadog hired Plaintiff as an Enterprise Sales Engineer (SE 2) in Defendant's North Central region, reporting to Derek Niedermayer. Defendant's Sales Engineer career track comprises six levels, in order from lowest to highest: SE 1, SE 2, SE 3, Senior Sales Engineer, Staff Sales Engineer, and Principal Sales Engineer. At all times relevant to this Complaint, Defendant's enterprise Sales Engineering team for the North Central region was headed by Clint Kennedy and, to the best of Plaintiff's recollection, comprised fewer than thirty Datadog employees, including Mr. Niedermayer and Plaintiff. Plaintiff worked remotely from Chicago, Illinois throughout her employment. Except where otherwise indicated, all references in this Complaint to other Datadog employees' job titles and organizational levels are made to the best of Plaintiff's recollection based on her observations during her employment.

**Disability disclosure**

4. January 6, 2025 was Plaintiff's first day of employment and the first day of Defendant's mandatory in-person new hire training in New York City. That day, prior to the start of training, Plaintiff disclosed her ADHD diagnosis to Mr. Niedermayer during a one-on-one meeting and requested accommodations for her disability.

**Accommodation request denied; additional requirements imposed only on Plaintiff**

5. During her ramping period, Plaintiff was required to master Defendant's product suite, demonstration skills, and certifications. Throughout that period, Plaintiff repeatedly requested in her one-on-one meetings with Mr. Niedermayer specific accommodations, including additional preparation days

**ATTACHMENT 1: III(E):** 2 of 6

between scheduled certification attempts. Mr. Niedermayer repeatedly denied Plaintiff's accommodation requests. Defendant did not engage in the interactive process required by 29 C.F.R. § 1630.2(o)(3).

6. Rather than provide the accommodations Plaintiff requested, Mr. Niedermayer imposed on Plaintiff additional performance requirements and oversight obligations that were not imposed on Plaintiff's similarly situated peers. These additional requirements, first imposed on or about July 22, 2025, included weekly performance criteria against which Mr. Niedermayer scored Plaintiff each week and a formal "Weekly Accountability" deliverable. Imposing additional requirements on Plaintiff during the same period in which she was requesting accommodations for her disability made her working conditions worse, not better.

**Sustained positive performance through October 2025**

7. During the first ten months of Plaintiff's employment, Defendant did not issue any formal performance warning to Plaintiff. During this period, even though Defendant had denied Plaintiff's accommodation requests, Plaintiff received documented praise from Mr. Niedermayer and from other members of Datadog leadership. On May 6, 2025, Sid Dhingra, a member of Defendant's Product Management team, described Plaintiff as "a star SE" in a multi-team Slack thread regarding the "3M SPL Conversion" customer engagement. Plaintiff's technical input from her customer engagement was used by Defendant's Product Management team to inform Defendant's product direction. On August 15, 2025, Mr. Niedermayer emailed Plaintiff: "good work getting some momentum in your discovery and demo goals." On September 18, 2025, Mr. Niedermayer emailed Plaintiff: "You hit the goals last week!!!" "It appears momentum is increasing" and "Great work getting onsite last week."

8. On September 10, 2025, Plaintiff successfully performed her first on-site customer demonstration at O'Reilly Auto Parts, a Tier 1 Datadog customer. On September 26, 2025, in a Slack exchange, Mr. Niedermayer confirmed in writing that Plaintiff remained the lead Sales Engineer on the O'Reilly account.

9. Following the September 10, 2025 on-site demonstration, O'Reilly engaged Defendant in two additional sales opportunities, including a customer trial of Defendant's products that Plaintiff was assigned to lead. Plaintiff led the trial through its successful conclusion. Jesse Shapiro, Defendant's

Account Executive on the O'Reilly account, provided positive feedback to the Plaintiff regarding her work on the trial. The success of the trial established additional trust within the O'Reilly account that enabled Defendant's account team to engage higher levels of leadership at O'Reilly Auto Parts.

**Abrupt shift to adverse action**

10. On October 31, 2025, Mr. Niedermayer issued Plaintiff a formal performance warning, the first formal performance action Defendant had taken with respect to Plaintiff,

11. On November 10, 2025, in a Slack direct message, Plaintiff asked Mr. Niedermayer whether an upcoming call would place her on a Performance Improvement Plan. Mr. Niedermayer answered "Yes."

12. On November 11, 2025, Defendant placed Plaintiff on a 28-day Performance Improvement Plan. The Performance Improvement Plan explicitly cited Plaintiff's prior accommodation requests as evidence of inadequate performance, stating: "Below-target proficiency and lagging independence: There were multiple times that an extension was requested to maintain progress, yet progress slowed drastically when direct coaching decreased."

13. Multiple meetings of the O'Reilly trial described in paragraph 9 took place during the period of Plaintiff's Performance Improvement Plan. In those meetings, Plaintiff was required to work through difficult technical tasks with the customer without supporting coverage from any other Sales Engineer or from Mr. Niedermayer, even though the Performance Improvement Plan asserted that Plaintiff required oversight.

**Disparate treatment relative to male comparator**

14. Plaintiff's male comparator, Mostafa Radwan, was hired by Datadog in or about August 2024 as Senior Sales Engineer, two levels above the SE 2 level at which Plaintiff was hired, even though Mr. Radwan and Plaintiff were assigned overlapping responsibilities. Mr. Radwan had approximately ten years of prior Sales Engineering experience; Plaintiff had approximately one year. Defendant granted Mr. Radwan a substantially more accommodating ramp timeline than the one imposed on Plaintiff. In the comparison month of October 2025, Plaintiff and Mr. Radwan each completed nineteen customer meetings, even though Plaintiff was on bereavement leave for three days during that month. Mr. Radwan was not placed on a Performance Improvement Plan.

**ATTACHMENT 1: III(E):**                                                    4 of 6

**Sex-based framing in internal Datadog communications**

15. On June 24, 2025, during one of Plaintiff's certifications attempts, Mr. Niedermayer screen-shared his computer. Plaintiff observed in the background of Mr. Niedermayer's screen a Slack conversation among Mr. Niedermayer, Clint Kennedy (Mr. Niedermayer's manager), and Edward Ferron (a Principal Sales Engineer on Mr. Kennedy's team). The visible portion of the conversation included statements that the subject of the discussion was "struggling with her confidence" and that the participants were "not sure where the emotion is coming in." Plaintiff believed at the time, and continues to believe, that the visible portion of the conversation concerned her, based on the context of the messages, including the use of female pronouns, the involvement of all three participants in Plaintiff's evaluation that day, and the fact that Plaintiff was the female Sales Engineer being evaluated by Mr. Niedermayer at the time the conversation was visible. Two of the three participants, Mr. Niedermayer and Mr. Kennedy, held managerial authority with respect to Plaintiff's employment. Later that evening, on June 24, 2025 at 9:34 PM Central Daylight Time, Mr. Niedermayer sent a calendar invitation for Plaintiff's next certification panel, scheduled for June 30, 2025. Mr. Kennedy and Mr. Ferron were among the formally appointed panelists for the June 30, 2025 evaluation.

16. The June 30, 2025 certification panel consisted of five male Datadog employees: Mr. Kennedy; Mr. Ferron; Jesse Kalhoff, a Principal Sales Engineer on Mr. Kennedy's team; Steve Postek, a Senior Sales Engineer on Mr. Niedermayer's team; and Neeraj Chaudhary, a Senior Sales Engineer on Mr. Niedermayer's team. Mr. Niedermayer first communicated the June 30 panel date to Plaintiff at 9:34 PM Central Daylight Time on June 24, 2025. As a result of the scheduling, Plaintiff was required to cancel pre-approved vacation time she had reserved for that week and forfeit approximately $260 in non-refundable booking costs because the cancellation occurred less than three days before the start of her scheduled travel.

**Protected activity**

17. On December 4, 2025, Plaintiff sought outside employment counsel regarding Defendant's conduct, which Plaintiff identified as gender and disability discrimination and retaliation. Plaintiff had previously filed an internal HR complaint with Defendant, and Defendant opened a third-party investigation of that complaint.

18. From in or about December 2025 through January 12, 2026, Plaintiff was on a medical leave of absence administered through UNUM. The leave was occasioned by the cumulative effects of Defendant's conduct on Plaintiff's health.

**Defendant's written anti-retaliation assurance**

19. On January 6, 8, 9, 2026, Plaintiff sent written request to Defendant's Leaves Specialist, Jessica Young, and to Defendant's People Business Partner, Talia Flantzman, asking for a non-retaliatory work environment and protection from further interference by the subject of the investigation, Mr. Niedermayer.

20. On January 12, 2026, Defendant responded in writing, invoking its "Anti-Retaliation Policy" by name and confirming that interim manager Vic Gonzalez would manage Plaintiff while the investigation was open. Plaintiff returned to work on January 12, 2026.

**Breach of the assurance and pretext-based transfer denial**

21. On February 5, 2026, Defendant denied Plaintiff's internal-transfer application for a position with the Datadog for Startups team. In a Slack direct message, Ms. Flantzman informed Plaintiff that "the application was fine" and that the "rejection is solely due to tenure." Specifically, Plaintiff had been in her current role for 13 months rather than the 18-month internal threshold. The tenure threshold is a discretionary internal policy that Defendant has waived for other employees on a case-by-case basis. Plaintiff is informed and believes, and on that basis alleges, that Defendant did not apply the tenure threshold uniformly and invoked it here as a pretext for retaliation against Plaintiff's prior protected activity.

22. On February 10, 2026, twenty-nine days after Defendant's January 12 written assurance that Mr. Niedermayer would not manage Plaintiff during the open investigation, Mr. Niedermayer sent Plaintiff a direct message assigning her to the Chamberlain Group customer account, contrary to that written assurance.

**Termination**

23. On March 2, 2026, Defendant terminated Plaintiff's employment, effective immediately.

**ATTACHMENT 1: III(E):**                                                        6 of 6

**Exhaustion of administrative remedies**

24. On March 23, 2026, Plaintiff filed EEOC Charge No. 440-2026-01839 alleging sex discrimination, disability discrimination, and retaliation under Title VII and the Americans with Disabilities Act. On March 25, 2026, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff files this Complaint within ninety days of receipt of the Notice of Right to Sue.

**ATTACHMENT 2:**
**Equal Employment Opportunity Commission Charge of Discrimination**

EEOC No. 440-2026-01839 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 440-2026-01839 |
| Illinois Department Of Human Rights | |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Sabrina Palmer

Phone No.:        847-922-5971
Year of Birth:        1997
Mailing Address: 2010 w concord pl
CHICAGO, IL 60647

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: Datadog, Inc.
No. Employees, Members: 501+ Employees
Phone No.:
Mailing Address: 620 8TH AVE FL 45
NEW YORK, NY 10018, UNITED STATES OF AMERICA
Name:
No. Employees, Members:
Phone No.:
Mailing Address:

DISCRIMINATION BASED ON:

Disability, Retaliation, Sex

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 01/06/2025
Latest: 03/02/2026
Continuing Action

THE PARTICULARS ARE:

I began my employment with Respondent on or about January 6, 2025. I worked remotely from Chicago, IL. My position title was Enterprise Sales Engineer. During my employment I informed Respondent of my disability and requested reasonable accommodations, which were not provided. I was also subjected to different terms and conditions of employment, including but not limited to, being given accelerated deadlines and not being assigned sales accounts. I complained to Respondent. Subsequently, on or about March 2, 2026, I was discharged.

I believe I have been discriminated against because of my sex, female, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I believe I have been discriminated against because of my disability, and in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Sabrina Palmer
03/23/2026
_____
Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____
Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____

Printed Name _____

## CP ENCLOSURE WITH EEOC FORM 5 (06/24)

### PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**ATTACHMENT 3:**
**Equal Employment Opportunity Commission Notice of Right to Sue Letter**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/25/2026

**To:** Sabrina Palmer
2010 w concord pl
CHICAGO, IL 60647
Charge No: 440-2026-01839

EEOC Representative and email:     VANESSA HETHERINGTON
INVESTIGATOR
VANESSA.HETHERINGTON@EEOC.GOV

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2026-01839.

On behalf of the Commission,

Digitally Signed By:Amrith Kaur Aakre
03/25/2026
Amrith Kaur Aakre
District Director

**Cc:**
NA NA
Datadog, Inc.
2010 W Concord Pl
CHICAGO, IL 60647

Kerry Acocella
Datadog
620 8th Ave Fl 45
New York, NY 10018

Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2026-01839 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2026-01839 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (05/25)

are not considered in determining if the impairment substantially limits a major life activity.

☐ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

☐ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

### "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

☐ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

☐ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

☐ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**ATTACHMENT 4:**
**V: Relief**

**ATTACHMENT 4: V:**

Plaintiff respectfully requests that the Court enter judgement in her favor and grant the following relief: (a) back pay and lost wages from the date of termination (March 2, 2026) through judgment, including base salary, commissions, bonuses, RSU vesting that would have occurred, and benefits including healthcare and 401(k) contributions; (b) front pay in lieu of reinstatement, in an amount to be determined at trial, reflecting the difficulty of obtaining comparable enterprise sales engineering employment after a retaliatory discharge and the public record of Plaintiff's EEOC charge; (c) compensatory damages for emotional distress, humiliation, and reputational harm, in an amount to be determined at trial; (d) punitive damages for defendant's knowing and reckless retaliation in the face of an open internal investigation and a written anti-retaliation assurance, in an amount to be determined at trial; (e) liquidated/ double damages where authorized by statute; (f) injunctive and equitable relief including expungement of the November 2025 Performance Improvement Plan and the March 2026 discharge from plaintiff's personnel record, a neutral employee reference, and a Court order requiring defendant refrain from further retaliation against plaintiff and any witnesses who support her complaint; (g) prejudgment and post-judgment interest at the legal rate; (h) reasonable attorney's fees, expert witness fees, and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12205, and 28 U.S.C. § 1920; and (i) such other and further relief as the Court deems just and proper.