**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SABRINA PALMER,** Plaintiff, v. **DATADOG, INC.,** Defendant. | ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:26-cv-07279<br><br>Hon. Judge Elaine E. Bucklo<br>Magistrate Judge Young B. Kim |

**DEFENDANT'S ANSWER TO PLAINTIFF'S**
**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

NOW COMES Defendant DATADOG, INC., by and through its attorneys OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., and in answer to Plaintiff's Complaint for Employment Discrimination, states as follows:

## I. The Parties to This Complaint

A. The Plaintiff(s)

Sabrina Palmer
144 Happ Rd.
Northfield, Cook County
Illinois, 60093
847-922-5971
Sabrinapalmer@gmail.com

**ANSWER:** Upon information and belief, Defendant admits the allegations in this Paragraph.

B. The Defendant(s)

Datadog, Inc.
620 8th Avenue, 45th Floor
New York, New York County
New York, 10018
866-329-4466
info@datadoghq.com

**ANSWER:** Defendant admits the allegations in this Paragraph.

C. Place of Employment

Datadog, Inc. (plaintiff was a fully remote employee)
2010 W. Concord Pl. (plaintiff's remote work location)
Chicago, Cook County
Illinois, 60647
847-388-5971

**ANSWER:** Defendant admits that Plaintiff was a fully remote employee employed by Defendant Datadog, Inc. Upon information and belief, Defendant admits that Plaintiff remotely worked from 2010 W. Concord Pl., Chicago, Illinois 60647, and maintains a personal phone number of (847) 388-5971.

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to:

1. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

2. Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

**ANSWER:** Defendant admits that Plaintiff brings this action for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") and the American With Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12122 to 12117 ("ADA"), but Defendant denies violating Title VII, ADA, or engaging in any unlawful employment practice.

## III. Statement of Claim

A. The discriminatory conduct of which I could complain in this action includes:

1. Termination of my employment.

2. Failure to accommodate my disability.

3. Unequal terms and conditions of my employment.

4. Retaliation.

**ANSWER:** Defendant admits that Plaintiff complains of the conduct identified above, but Defendant denies violating Title VII, the ADA, or engaging in any unlawful employment practice.

B. It is my best recollection that the alleged discriminatory acts occurred on date(s) January 6, 2025 (date of hire) through March 2, 2026 (date of discharge).

**ANSWER:** Defendant denies the allegations in this Paragraph.

C. I believe that defendant is/are not still committing these acts against me.

**ANSWER:** Defendant lacks knowledge and information sufficient to form a belief about the truth of what Plaintiff believes. By way of further answer, Defendant denies violating Title VII, the ADA, or engaging in any unlawful employment practice.

D. Defendant(s) discriminated against me based on my gender (Female) and disability or perceived disability (ADHD substantially limits learning and concentration).

**ANSWER:** Defendant denies the allegations in this Paragraph.

E. The facts of my case are as follows. Attach additional pages if needed.

See ATTACHMENT 1

**ANSWER:** Defendant admits that Plaintiff's "ATTACHMENT 1" is attached to Plaintiff's Complaint. Defendant incorporates by reference its specific answers to ATTACHMENT 1.

**ATTACHMENT 1:**
**III(E): Statement of Claim; The facts of my case are as follows.**

**Parties**

1. Plaintiff Sabrina Palmer is a woman. Plaintiff has been diagnosed with Attention-Deficit/Hyperactivity Disorder (ADHD). Compared to most people, Plaintiff's ADHD substantially limits major life activities of concentrating and learning, including her ability to focus for sustained periods and to retain dense new technical information of the type required by the Sales Engineer role. With reasonable accommodation, Plaintiff is qualified to perform the essential

functions of the Sales Engineer position.

**ANSWER:** Defendant admits Plaintiff Sabrina Palmer is a woman. Defendant lacks information and knowledge sufficient to form a belief as to whether Plaintiff has been diagnosed with Attention-Deficit/Hyperactivity Disorder (ADHD). Defendant denies the remaining allegations in this Paragraph.

2. Defendant Datadog, Inc. is a Delaware Corporation headquartered at 620 8th Avenue, 45th Floor, New York, NY 10018 and employs 501 or more employees.

**ANSWER:** Defendant admits the allegations in this Paragraph.

3. On January 6, 2025, Datadog hired Plaintiff as an Enterprise Sales Engineer (SE 2) in Defendant's North Central region, reporting to Derek Niedermayer. Defendant's Sales Engineer career track comprises six levels, in order from lowest to highest; SE 1, SE 2, SE 3, Senior Sales Engineer, Staff Sales Engineer, and Principal Sales Engineer. At all times relevant to this Complaint, Defendant's enterprise Sales Engineering team for the North Central region was headed by Clint Kennedy and, to the best of Plaintiff's recollection, comprises fewer than thirty Datadog employees, including Mr. Niedermayer and Plaintiff. Plaintiff worked remotely from Chicago, Illinois throughout her employment. Except where otherwise indicated, all references in its Complaint to other Datadog employees' job titles and organizational levels are made to the best of Plaintiff's recollection based on her observation during her employment.

**ANSWER:** Defendant admits that it hired Plaintiff as an Enterprise Sales Engineer 2 in Defendant's North Central region on January 6, 2025, reporting to Derek Niedermayer; admits that Clint Kennedy headed Defendant's enterprise Sales Engineering team for the North Central region; and admits that Plaintiff worked remotely from Chicago, Illinois throughout her employment. Defendant lacks information and knowledge sufficient to form a belief as to whether

all references in Plaintiff's Complaint to other Datadog employees' job titles and organizational levels are made to the best of Plaintiff's recollection based on her observation during her employment and whether it is Plaintiff's best recollection that Defendant's enterprise Sales Engineering team for the North Central region is comprised of fewer than thirty Datadog employees. Defendant denies all remaining allegations in this Paragraph.

**Disability disclosure**

4. January 6, 2025 was Plaintiff's first day of employment and the first day of Defendant's mandatory in-person new hire training in New York City. That day, prior to the start of training, Plaintiff's disclosed her ADHD diagnosis to Mr. Niedermayer during a one-on-one meeting and requested accommodations for her disability.

**ANSWER:** Defendant admits that January 6, 2025 was Plaintiff's first day of employment and the first day of in-person new hire training in New York City. Defendant denies the remaining allegations in this paragraph.

**Accommodation request denied; additional requirements imposed only on Plaintiff**

5. During her ramping period, Plaintiff was required to master Defendant's product suite, demonstration skills, and certifications. Throughout that period, Plaintiff repeatedly requested in her one-on-one meetings with Mr. Niedermayer specific accommodations, including additional preparation days between scheduled certification attempts. Mr. Niedermayer repeatedly denied Plaintiff's accommodation requests. Defendant did not engage in the interactive process required by 29 C.F.R. §1630.2(o)(3).

**ANSWER:** Defendant denies the allegations in this Paragraph.

6. Rather than provide the accommodations Plaintiff requested, Mr. Niedermayer imposed on Plaintiff additional performance requirements and oversight obligations that were not

imposed on Plaintiff's similarly situated peers. These additional requirements, first imposed on or about July 22, 2025, included weekly performance criteria against which Mr. Niedermayer scored Plaintiff each week and a formal "Weekly Accountability" deliverable. Imposing additional requirements on Plaintiff during the same period in which she was requesting accommodations for her disability made her working conditions worse, not better.

**ANSWER:** Defendant denies the allegations in this Paragraph.

**Sustained positive performance through October 2025**

7. During the first ten months of Plaintiff's employment, Defendant did not issue any formal performance warning to Plaintiff. During this period, even though Defendant had denied Plaintiff's accommodation requests, Plaintiff received documented praise from Mr. Niedermayer and from other members of Datadog leadership. On May 6, 2025, Sid Dhingra, a member of Defendant's Product Management team, described Plaintiff as "a star SE" in a multi-team Slack thread regarding the "3M SPL Conversion" customer engagement. Plaintiff's technical input from her customer engagement was used by Defendant's Product Management team to inform Defendant's production direction. On August 15, 2025, Mr. Niedermayer emailed Plaintiff "good work getting some momentum in your discovery and demo goals." On September 18, 2025, Mr. Niedermayer emailed Plaintiff: "You hit the goals last week!!" "it appears momentum is increasing" and "great work getting onsite last week."

**ANSWER:** Plaintiff refers to three documented communications in this Paragraph. These communications speak for themselves and must be read in their entirety and thus no response is necessary. Defendant denies the remaining allegations in this Paragraph.

8. On September 10, 2025, Plaintiff successfully performed her first on-site customer demonstration at O'Reilly Auto Parts, a tier 1 Datadog customer. On September 26, 2025, in a

Slack exchange, Mr. Niedermayer confirmed in writing that Plaintiff remained the lead Sales Engineer on the O'Reilly account.

**ANSWER:** Plaintiff refers to a documented communication in this Paragraph. This communication speaks for itself and must be read in its entirety and thus no response is necessary. Defendant denies the remaining allegations in this Paragraph.

9. Following the September 10, 2025 on-site demonstration, O'Reilly engaged Defendant in two additional sales opportunities, including a customer trial of Defendant's products that Plaintiff was assigned to lead. Plaintiff led the trial through its successful conclusion. Jesse Shapiro, Defendant's Account Executive on the O'Reilly account, provided positive feedback to the Plaintiff regarding her work on the trial. The success of the trial established additional trust within the O'Reilly account that enabled Defendant's account team to engage higher levels of leadership at O'Reilly Auto Parts.

**ANSWER:** Defendant denies the allegations in this Paragraph.

**Abrupt shift to adverse action**

10. On October 31, 2025, Mr. Niedermayer issued Plaintiff a formal performance warning, the first formal performance action Defendant had taken with respect to Plaintiff.

**ANSWER:** Defendant admits that Derek Niedermayer emailed Plaintiff about performance concerns on October 31, 2025. Defendant denies the remaining allegations in this Paragraph.

11. On November 10, 2025, in a Slack direct message, Plaintiff asked Mr. Niedermayer whether an upcoming call would place her on a Performance Improvement Plan. Mr. Niedermayer answered "Yes."

**ANSWER:** Plaintiff refers to a documented communication in this Paragraph. This communication speaks for itself and must be read in its entirety and thus no response is necessary. Defendant denies the remaining allegations in this Paragraph.

12. On November 11, 2025, Defendant placed Plaintiff on a 28-day Performance Improvement Plan. The Performance Improvement Plan explicitly cited Plaintiff's prior accommodation requests as evidence of inadequate performance, stating: "Below-target proficiency and lagging independence: There were multiple times that an extension was requested to maintain progress, yet progress slowed drastically when direct coaching decreased."

**ANSWER:** Defendant admits that Defendant placed Plaintiff on a Performance Improvement Plan on or about November 11, 2025. Plaintiff refers to the Performance Improvement Plan in this Paragraph. This document speaks for itself and must be read in its entirety and thus no response is necessary. Defendant denies the remaining allegations in this Paragraph.

13. Multiple meetings of the O'Reilly trial described in paragraph 9 took place during the period of Plaintiff's Performance Improvement Plan. In those meetings, Plaintiff was required to work through difficult technical tasks with the customer without supporting coverage from any other Sales Engineer or from Mr. Niedermayer, even though the Performance Improvement Plan asserted that Plaintiff required oversight.

**ANSWER:** Defendant admits that Plaintiff attended meetings with O'Reilly during the duration of Plaintiff's Performance Improvement Plan. Defendant denies the remaining allegations in this Paragraph.

**Disparate treatment relative to male comparator**

14. Plaintiff's male comparator, Mostafa Radwan, was hired by Datadog in or about August 2024 as Senior Sales Engineer, two levels above the SE 2 level at which Plaintiff was

hired, even though Mr. Radwan and Plaintiff were assigned overlapping responsibilities. Mr. Radwan had approximately ten years of prior Sales Engineering experience; Plaintiff had approximately one year. Defendant granted Mr. Radwan a substantially more accommodating ramp timeline than the one imposed on Plaintiff. In the comparison month of October 2025, Plaintiff and Mr. Radwan each completed nineteen customer meetings, even though Plaintiff was on bereavement leave for three days during that month. Mr. Radwan was not placed on a Performance Improvement Plan.

**ANSWER:** Defendant admits that Mostafa Radwan was hired by Defendant in or about August 2024 as Senior Sales Engineer. Defendant denies the remaining allegations in this Paragraph.

**Sex-based framing in internal Datadog communications**

15. On June 24, 2025, during one of Plaintiff's certifications attempts, Mr. Niedermayer screen-shared his computer. Plaintiff observed in the background of Mr. Niedermayer's screen a Slack conversation among Mr. Niedermayer, Clint Kennedy (Mr. Niedermayer's manager), and Edward Ferron (a Principal Sales Engineer on Mr. Kennedy's team). The visible portion of the conversation included statements that the subject of the discussion was "struggling with her confidence" and that the participants were "not sure where the emotion is coming in." Plaintiff believed at the time, and continues to believe, that the visible portion of the conversation concerned her, based on the context of the messages, including the use of female pronouns, the involvement of all three participants in Plaintiff's evaluation that day, and the fact that Plaintiff was the female Sales Engineer being evaluated by Mr. Niedermayer at the time the conversation was visible. Two of the three participants, Mr. Niedermayer and Mr. Kennedy, held managerial authority with respect to Plaintiff's employment. Later that evening, on June 24, 2025 at 9:34 PM Central Daylight Time, Mr. Niedermayer sent a calendar invitation for Plaintiff's next certification panel,

scheduled for June 30, 2025. Mr. Kennedy and Mr. Ferron were among the formally appointed panelists for the June 30 evaluation.

**ANSWER:** Defendant admits that Plaintiff attempted a certification on June 24, 2025; admits that Mr. Niedermayer, Mr. Kennedy, and Mr. Ferron were in attendance on June 24, 2025; and admits that Mr. Niedermayer and Mr. Kennedy held managerial authority over Plaintiff's employment. Defendant lacks information and knowledge sufficient to form a belief as to whether Plaintiff believes that the alleged Slack conversation concerned her. Plaintiff refers to two communications in this Paragraph. These communications speak for themselves and must be read in their entirety and thus no response is necessary. Defendant denies the remaining allegations in this Paragraph.

16. The June 30, 2025 certification panel consisted of five male Datadog employees: Mr. Kennedy; Mr. Ferron; Jesse Kalhoff; a Principal Sales Engineer on Mr. Kennedy's team; Steve Postek, a Senior Sales Engineer on Mr. Niedermayer's team; and Neeraj Chaudhary, a Senior Sales Engineer on Mr. Niedermayer's team. Mr. Niedermayer first communicated the June 30 panel date to Plaintiff at 9:34 PM Central Daylight Time on June 24, 2025. As a result of the scheduling, Plaintiff was required to cancel pre-approved vacation time she had reserved for that week and forfeit approximately $260 in non-refundable booking costs because the cancellation occurred less than three days before the start of her scheduled travel.

**ANSWER:** Defendant admits that Mr. Niedermayer scheduled another certification attempt for June 30, 2025, and that the certification panel consisted of Clint Kennedy, Edward Ferron, Jesse Kalhoff, Seve Postek, and Nerraj Chaudhary. Plaintiff refers to a communication in this Paragraph. This document speaks for itself and must be read in its entirety and thus no response is necessary. Defendant denies the remaining allegations in this Paragraph.

**Protected activity**

17. On December 4, 2025, Plaintiff sought outside employment counsel regarding Defendant's conduct, which Plaintiff identified as gender and disability discrimination and retaliation. Plaintiff had previously filed an internal HR complaint with Defendant, and Defendant opened a third-party investigation of that complaint.

**ANSWER:** Defendant admits that Plaintiff filed an internal HR complaint with Defendant and that Defendant opened a third-party investigation of that complaint. Defendant lacks information and knowledge sufficient to form a belief as to when Plaintiff sought outside employment counsel. Defendant denies all remaining allegations in this Paragraph and further denies that Plaintiff was subject to gender and disability discrimination.

18. From in or about December 2025 through January 12, 2026, Plaintiff was on a medical leave of absence administered through UNUM. The leave was occasioned by the cumulative effects of Defendant's conduct on Plaintiff's health.

**ANSWER:** Defendant admits that Plaintiff was absent from work in or about December 2025 until January 12, 2026. Defendant denies the remaining allegations in Paragraph 18.

**Defendant's written anti-retaliation assurance**

19. On January 6, 8, 9, 2026, Plaintiff sent written request to Defendant's Leaves Specialist, Jessica Young, and to Defendant's People Business Partner, Talia Flantzman, asking for a non-retaliatory work environment and protection from further interference by the subject of the investigation Mr. Niedermayer.

**ANSWER:** Plaintiff refers to three written requests in this Paragraph. These documents speak for themselves and must be read in their entirety and thus no response is necessary. Defendant denies the remaining allegations in this Paragraph.

20. On January 12, 2026, Defendant responded in writing, invoking its "Anti-Retaliation

Policy" by name and confirming that interim manager Vic Gonzalez would manage Plaintiff while investigation was open. Plaintiff returned to work on January 12, 2026.

**ANSWER:** Defendant admits that Plaintiff returned to work on January 12, 2026, reporting to interim manager Vic Gonzalez. Plaintiff refers to a written communication in this Paragraph. This document speaks for itself and must be read in its entirety and thus no response is necessary. Defendant denies the remaining allegations in this Paragraph.

**Breach of the assurance and pretext-based transfer denial**

21. On February 5, 2026, Defendant denied Plaintiff's internal transfer application for a position with the Datadog for Startups team. In a Slack direct message, Ms. Flantzman informed Plaintiff that "the application was fine" and that the "rejection is solely due to tenure." Specifically, Plaintiff had been in her current role for 13 months rather than the 18-month internal threshold. The tenure threshold is a discretionary internal policy that Defendant has waived for other employees on a case-by-case basis. Plaintiff is informed and believes, and on that basis alleges, that Defendant did not apply the tenure threshold uniformly and invoked it here as a pretext for retaliation against Plaintiff's prior protected activity.

**ANSWER:** Plaintiff refers to a written communication in this Paragraph. This document speaks for itself and must be read in its entirety and thus no response is necessary. Defendant denies the remaining allegations in this Paragraph.

22. On February 10, 2026, twenty-nine days after Defendant's January 12 written assurance that Mr. Niedermayer would not manage Plaintiff during the open investigation, Mr. Niedermayer sent Plaintiff a direct message assigning her to the Chamberlain Group customer account, contrary to that written assurance.

**ANSWER:** Plaintiff refers to a written communication in this Paragraph. This document speaks for itself and must be read in its entirety and thus no response is necessary. Defendant denies the remaining allegations in this Paragraph.

**Termination**

23. On March 2, 2026, Defendant terminated Plaintiff's employment effective immediately.

**ANSWER:** Defendant admits the allegations in Paragraph 23.

**Exhaustion of administrative remedies**

24. On March 23, 2026, Plaintiff filed EEOC Charge No. 440-2026-01839 alleging sex discrimination, disability discrimination, and retaliation under Title VII and the Americans with Disabilities Act. On March 25, 2026, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff files this Complaint within ninety days of receipt of the Notice of Right to Sue.

**ANSWER:** Defendant admits that Plaintiff attaches ATTACHMENT 2, a copy of EEOC Charge No. 440-2026-01839, and ATTACHMENT 3, a copy of the EEOC Notice of Right to Sue for Charge No. 440-2026-01839. Defendant denies the remaining allegations in Paragraph 24.

**IV. Exhaustion of Federal Administrative Remedies**

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on March 23, 2026.

**ANSWER:** Defendant admits that ATTACHMENT 2 appears to be a copy of Plaintiff's Charge of Discrimination filed with the Equal Employment Opportunity Commission regarding the Defendant's alleged discriminatory conduct on March 23, 2026. Defendant denies the remaining allegations in this Paragraph.

B. The Equal Employment Opportunity Commission issued a Notice of Right to Sue letter, which I received on March 25, 2026.

**ANSWER:** Defendant admits that ATTACHMENT 3 appears to be a copy of a Notice of Right to Sue letter dated on March 25, 2026. Defendant lacks knowledge and information sufficient to form a belief about on which date Plaintiff received the Notice of Right to Sue letter.

**V. Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See ATTACHMENT 4.

**ANSWER:** Defendant admits that Plaintiff seeks the relief asserted in ATTACHMENT 4, but Defendant denies that it is engaged in or is liable for any wrongful conduct, and further denies that any relief Plaintiff requested, or any other relief to Plaintiff, is warranted or appropriate.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

1. Plaintiff's claims are barred, in whole or in part, to the extent they exceed the scope of or are inconsistent with the Charge of Discrimination Plaintiff filed against Defendant with the EEOC.

2. Plaintiff's claims are barred in whole or part by the applicable statutes of limitation.

3. Defendant exercised reasonable care to prevent and correct promptly any discriminatory behavior, and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

4. Even if the trier of fact were to determine that a discriminatory and/or retaliatory motive or reason played any part in the employment decision or actions regarding Plaintiff, which Defendant denies, such decisions or actions would have been taken in any event absent a discriminatory and/or retaliatory motive or reason, for legitimate, non-discriminatory, and/or non-

retaliatory reasons.

5. Plaintiff is barred from recovering any damages, or any recovery of damages must be reduced, by virtue of Plaintiff's failure to exercise reasonable diligence to mitigate Plaintiff's alleged damages.

6. To the extent that Plaintiff had any pre-existing emotional, psychological, and physical condition prior to the alleged act(s) of misconduct was such that Defendant did not proximately cause or contribute in any manner to Plaintiff's alleged injuries or damages, and Defendant may not be held liable for any such alleged injuries or damages.

7. Plaintiff's Complaint fails to state a cause of action upon which relief may be granted, as Plaintiff is not disabled as that term is defined in the Americans with Disabilities Act, as amended, 42 USC § 12101, *et seq*.

8. Plaintiff's Complaint fails to state a cause of action upon which relief may be granted in that Plaintiff never notified Defendant of the need for any reasonable accommodation.

9. Plaintiff's claims, to the extent they state claims that entitle Plaintiff to relief, are subject to applicable damages caps or limitations.

10. Plaintiff is not entitled to any punitive damages because Defendant did not willfully violate any statute or act recklessly, wantonly, or willfully.

11. Plaintiff's claims are barred, in whole or in part, by any additional after-acquired evidence that may arise during these proceedings.

12. Defendant denies every allegation, whether expressed or implied, that is not unequivocally and specifically admitted in its Answer and Defenses to Plaintiff's Complaint. Defendant reserves the right to supplement and amend its Additional and Affirmative Defenses as warranted by the facts of the case. Defendant affirmatively states that it will rely upon each and

every affirmative defense or other avoidance provided by the Federal Rules of Civil Procedure that may become known during the course of litigation, including discovery, trial, or otherwise.

**WHEREFORE**, Defendant respectfully requests that this Court enter an Order:

(1) Giving Plaintiff nothing by way of her claims herein;

(2) Entering judgment in favor of Defendant on all claims;

(3) Dismissing the Complaint with prejudice;

(4) Awarding Defendant attorneys' fees it has incurred in defending this action as may be just, proper, and in accordance with the law;

(5) Awarding Defendant costs of suit it has incurred in this action as may be just, proper and in accordance with the law; and

(6) Entering such other and further relief as the Court may deem just and proper.

Dated: August 21, 2026.

Respectfully submitted,

By: *<u>/s/ Margaret R. Foss</u>*
One of the Attorneys for Defendant

Jennifer L. Colvin (ARDC No. 6274731)
Margaret R. Foss (ARDC No. 6345788)
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 N. Wacker Drive, Suite 4300
Chicago, IL 60606
Telephone: 312.558.1220
Facsimile: 312.807.3619
*jennifer.colvin@ogletreedeakins.com*
*margaret.foss@ogletreedeakins.com*